# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# GREENVILLE DIVISION

ISHMAEL HARRIS,                                                          PETITIONER

V.                                                                    NO. 4:06CV76-P-B

JIM HOOD,                                                                RESPONDENT

## OPINION

This cause comes before the court on the petition of Ishmael Harris for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. He states that he was convicted in the Circuit Court of Carroll County, Mississippi, of aggravated assault and felon in possession of a firearm. Harris was sentenced as an habitual offender to serve a term of life imprisonment. Petitioner appealed his case. The Mississippi Court of Appeals denied him relief and affirmed his convictions and sentence. *Harris v. State*, 901 So.2d 1277 (Miss. App. 2004). He then filed a petition for post-collateral relief in the Mississippi Supreme Court which addressed each of Hill's arguments and found them to be meritless. Respondent states and the court agrees that Petitioner has fully exhausted his state court remedies and this matter is ripe for review.

## Factual Background

On the night of August 31, 2002, at about 10:30 Paul Gayden was shot twice while in the parking lot of the 35-55 Truck Stop in Vaiden, Mississippi. During the evening of August 31st, Harris made three trips to Talley's Tobacco Shop in Vaiden which is located across the street from the Truck Stop. During his first visit Sybil McChristen, a cashier, checked Harris' purchase. The second trip McChristen was present but on a break so Gayden, the victim, checked Harris' purchase. The third trip at approximately 10:00 p.m., McChristen was at the cash register assisting other customers when Harris entered the store looking for his wallet. McChristen told Harris that she had not seen his wallet. Harris accused Gayden of taking his wallet. McChristen told Harris that Gayden had gone across the street to the Truck Stop. McChristen and two customers observed Harris get

into a white four-door car and drive over to the Truck Stop. Shortly thereafter, each witness heard gunshots.

Two sheriff's deputies were parked near the Truck Stop and also heard the gunfire. Deputy Rigby testified that an unidentified man told him the shots were fired by a black man in a four-door white car. When interviewed, the victim, Paul Gayden stated that he was shot by a black man wearing a white cap and white shirt. Gayden indicated that the attacker yelled "look, I want my wallet." The assailant demanded, "Give me my money." When Gayden explained that he didn't have any money, the man asked "you ain't going to give me my wallet," then shot Gayden twice.

Two employees of the Truck Stop, Renata Ward and Danny Donohoo, testified that they actually saw Harris fire the second shot at Gayden. Each witness described the shooter as a black man wearing a white shirt and white hat, and driving a white four-door car. Houston Green, a valet at a local night club, stated that he saw Harris later than night and Harris said he had shot someone earlier.

## **Standard of Review**

Harris' petition sets forth thirteen grounds for relief. Because each has been considered and ruled upon on the merits by the state courts, either on direct appeal or on motion for post-conviction relief, each is reviewed in within the limited confines of the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d) and *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Therefore, the findings of the state court are to be viewed with the presumption of correctness. 28 U.S.C. § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Until recently, the test for unreasonableness under § 2254(d)(1) in the Fifth Circuit was whether "'reasonable jurists considering the question would be of one view that the state court ruling was incorrect.'" *Moore v. Johnson*, 101 F.3d 1069, 1075-76 (5th Cir. 1996) (citing *Drinkard v. Johnson*, 97 F.3d 751, 767-68 (5th Cir. 1996)). However, the Supreme Court of the United States expressly rejected the *Drinkard* reasonable jurist standard in *Williams v. Taylor*, 529 U.S. 362,120 S. Ct. 1495, 1522 (2000). Pursuant to *Williams v. Taylor*, the court may issue the writ of *habeas corpus* only if the state court's ruling resulted in a decision that "(1) was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States, or (2) involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." *Williams*, 529 U.S. at 411-13, 120 S. Ct. at 1523 (internal quotation marks omitted). Furthermore,

> [u]nder the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.* It is not enough that the state court decision applied the law erroneously or incorrectly. The application of the principle must be unreasonable. *Id.* at 409-10. The district court must ask whether the state court's application of the principle was objectively reasonable, not whether all reasonable jurists would agree the state court made an incorrect decision. *Id.* at 408-10.

### **Grounds for Relief**

In support of his petition, Harris has asserted thirteen bases for relief:

Ground One: Ineffective assistance of counsel in failing to investigate the facts and file appropriate pretrial motions.

| | |
|---|---|
| Ground Two: | Whether counsel was ineffective for failing to seek a change of venue as requested by defendant. |
| Ground Three: | Counsel was ineffective for failing to file motion to record all proceedings and preserve record for appeal. |
| Ground Four: | Counsel failed to investigate and raise the issue of defendant not being allowed to post bond. |
| Ground Five: | Whether counsel was ineffective in failing to file motion to suppress the introduction into evidence surveillance video that was not authenticated no chain of custody established. |
| Ground Six: | Whether counsel was ineffective when he failed to object to comments made by the prosecutor during closing argument voicing his personal opinion, and attempting to bolster the credibility of witnesses for the State. |
| Ground Seven: | Whether counsel was ineffective by allowing testimony of state's expert witness, outside his field of expertise, without objection. |
| Ground Eight: | Whether counsel was ineffective by failing to move to sever the indictment. |
| Ground Nine: | Whether counsel was ineffective by failing to obtain the transcript of grand jury testimony and whether the prosecution was in violation of due process by withholding discovery information. |
| Ground Ten: | Whether counsel was ineffective for not offering an impeachment instruction on behalf of the defense. |
| Ground Eleven: | Whether Harris was denied due process when counsel withdrew before filing appeal. |
| Ground Twelve: | Whether Harris was denied his constitutional right due to cumulative errors. |
| Ground Thirteen: | Whether Harris was denied due process when the Supreme Court denied his motion for leave to proceed to the trial court. |

**<u>Ineffective Assistance of Counsel</u>**

With the exception of Grounds Eleven through Thirteen, each of Hill's theories hinges on the effectiveness of his attorney. "The ultimate determination whether counsel was constitutionally ineffective is a mixed question of law and fact that federal habeas courts have traditionally reviewed

de novo." *Carter v. Johnson*, 110 F.3d 1098, 1110 (5th Cir. 1997); *see, e.g., Salazar v. Johnson*, 96 F.3d 789, 791 (5th Cir. 1996); *United States v. Faubion*, 19 F.3d 226, 228 (5th Cir. 1994). However, after the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted, "federal courts must now honor the conclusions of state courts regarding the constitutional effectiveness of counsel, unless such determinations constitute an 'unreasonable application' of clearly established federal law, as determine by the Supreme Court." *Carter*, at 1110; *see* AEDPA, Pub. L. No. 104-132, § 104 (3), 110 stat. 1218; *see also Moore v. Johnson*, 101 F.3d 1069, 1075-76 (5th Cir. 1996) (holding that ineffective assistance of counsel claims are reviewed under the "unreasonable application" standard).

To establish ineffective assistance of counsel, Petitioner must show, "(1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense." *Pitts v. Anderson*, 122 F.3d 275 (5th Cir. 1997); *see also Strickland v. Washington*, 466 U.S. 688, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). When analyzing the deficiency prong, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. The court is not to analyze counsel's actions in hindsight, but rather to judge his or her decision in a "highly deferential" manner. *Motley v. Collins*, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.). The court inquires into prejudice only if the deficiency prong is satisfied. If counsel's performance is deemed to have been deficient, "then [the court] must determine whether there exists a reasonable probability that but for the complained-of error the outcome of the trial or appeal would have been different." *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).

To find prejudice, a court on habeas review must look past mere outcome determination. *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). The test formulated in *Strickland v. Washington*

> requires that a habeas petitioner prove not only that counsel's performance was deficient, but also that the deficient performance actually prejudiced the defense to such an extent that there is a reasonable probability that, but for the attorney's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings.

*Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.), *cert. denied*, 514 U.S. 1071 (1995) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). "[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceedings was fundamentally unfair or unreliable is defective." *Armstead*, 37 F.3d at 207 (citation omitted). Furthermore, the "unreliability" or "unfairness" mentioned in *Strickland* does not occur unless the ineffectiveness of counsel deprives the defendant of a "substantive or procedural right to which the law entitles him." *Fretwell,* 506 U.S. at 372. Each of Petitioner's claims is addressed individually below.

Ground One

Harris argues that his counsel was ineffective by failing to investigate the facts and file appropriate pretrial motions. Specifically, Petitioner takes issue with counsel's purported failure to interview witnesses prior to trial and to file a motion to suppress a surveillance video. Respondent appropriately suggests that Harris' arguments are conclusory and are, in any event, contradicted by the record. The court agrees.

As Respondent correctly notes, defense counsel filed numerous pretrial motions which were argued prior to trial. The trial transcript indicates that counsel cross examined each state witness and questioned defense witnesses. Counsel did, however, acknowledge that there was one particular witness he attempted but was unable to interview. Counsel's omission does not lend credence to Harris' argument but proves, rather that counsel did perform a pretrial investigation.

As for the surveillance video, although a pretrial motion to suppress was not filed, counsel did object to the admission of the video during trial. Also, counsel again challenged the admission of the tape in defendant's motion for a new trial. Counsel's failure to pursue a motion to suppress

6

surveillance video simply does not satisfy the *Strickland* standards of deficiency and prejudice. *See Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984) (counsel is not required to file futile pretrial motions).

Certainly, an attorney who fails to familiarize himself with the law and facts of the case could not possible provide effective counsel. *See Friedman v. U.S.*, 588 F.2d 1010, 1016-17 (5th Cir. 1979). The record in this case, however, simply does not reflect that defense counsel was unprepared or that Harris was deprived of a basic and adequate defense. To the contrary, counsel's representation of Harris was professional and reasonably competent under *Strickland*.

Ground Two

Next, Petitioner argues that counsel was ineffective for failing to seek a change of venue as he had requested. Petitioner contends that a change of venue was warranted because of bias that existed in the community. Harris insists that his knowledge of the bias was superior to that of his attorney. Rather than assuming bias existed in Carroll County, the court reviewed the record for evidence of juror prejudice.

During *voir dire* members of the venire were questioned and only four people had any knowledge of the criminal case and none of those four individuals were impaneled on the jury. (S.C.R. Vol. 2, pp. 41-43, 86-87). The State argues, since there is no evidence of bias, a motion for change of venue would have been futile, and, thus, counsel could not have been deficient failing to pursue such a course of action. Once again, the court agrees.

Regarding a motion for change of venue, the Fifth Circuit has held that prejudice is not to be presumed. *Busby v. Dretke*, 359 F.3d 708, 725 (5th Cir. 2004); *compare with Rideau v. Louisiana*, 373 U.S. 723, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (holding that presumed prejudice is applicable in only the most unusual cases where pretrial publicity literally saturated the community). In *Busby* the petitioner's unsuccessful change of venue argument was based alleged bias stemming from documented pretrial publicity. Rejecting his argument the court held, in the

absence bias in the record, the community's awareness of the charged crime is insufficient to demonstrate "unfairness of a constitutional magnitude." *Busby*, 359 F.3d at 725.

Like *Busby*, Harris has failed to point to any portion of the record that supports his theory. Further, there is no proof or argument that the crime for which Harris was charged and ultimately convicted was so extensively covered by the media so as to create a corrupt trail atmosphere. To the contrary, out of the 34 venire panel only four were aware of the events that lead to the criminal trial. (S.C.R. Vol. 2, p. 94). As stated previously none of those four individuals were seated on the jury. Therefore, not only has Harris failed to demonstrate the existence of a bias jury pool, the record contradicts his argument entirely. Thus, counsel was not ineffective for failing to file a futile motion and Ground Two is without merit. *See Smith v. Puckett*, 907 F.2d 581, 584-85 (5th Cir. 1990) (rejecting failure to move for change of venue as a basis for habeas relief where petitioner made no specific showing of potential community bias).

Ground Three

Harris' next theory is premised upon counsel's purported failure to file a motion to record all proceedings and preserve record for appeal. According to Harris, his trial counsel failed to request that all proceedings including bench and in-chambers conference be recorded in order to preserve the complete record for appeal. Unfortunately for Harris, the theory's lack of merit is only matched by its inaccuracy.

In direct contradiction of Petitioner's argument, the record reflects that on April 22, 2003, defense counsel filed a pretrial motion "for a complete recordation for a transcript of all pre-trial and trial proceedings." (S.C.R. Vol. 1, pp. 35-41). The request included "all bench conferences" and "in chambers" discussions. Additionally, Harris' appellate counsel designated transcripts of "bench conferences [and] conferences in chambers" as part of the record for appeal. (S.C.R. Vol. 1, p. 162. Therefore, Ground Three is simply unfounded and is denied.

Ground Four

8

Petitioner avers that counsel failed to investigate and raise the issue of defendant not being allowed to post bond. Once again, Harris' argument is based on false information. The record indicates that Harris' bond was originally set at $150,000. (S.C.R. Vol. 1, p. 8). Counsel later sought a reduction of the bond and the court granted the motion. (S.C.R. Vol. 1, pp. 11-13). As a result, counsel cannot be deemed ineffective for having successfully sought a reduced in bond. Even if counsel was not successful, Petitioner's argument would have no merit. Though Harris may have had a right to bail, he possessed no right to a particular amount of bail. *See* Miss. Const. Art. 4 § 29; *Jones v. State*, 798 So.2d 1241, 1255 (Miss. 2001); *Lee v. Lawson*, 375 So.2d 1019, 1021 (Miss. 1979). Furthermore, Petitioner has not shown, and could not show, the imaginative failure to pursue the issue had any effect on the outcome of his conviction. In other words, Petitioner's right to a reasonable bail was not violated and Ground Four does not warrant habeas relief.

Ground Six[1]

Harris claims that his trial counsel was ineffective when he failed to object to comments made by the prosecutor during closing arguments. Specifically, Harris claims that the prosecutor improperly attempted to bolster the credibility of witnesses and expressed a personal opinion. Though Harris does not indicate which portions of the closing arguments counsel should have objected to, the Respondent provides speculation as to the offending statements.

During the rebuttal closing argument, the prosecutor stated:

The next thing, when he was on this stand, witness stand up here, I think Paul was trying to be what I call super honest, not, not deceitful, not trying to hide the truth. Paul has absolutely no interest in accusing the wrong man. That would be pointless. It would be fruitless. It would be futile for him to make an allegation or testify falsely against somebody else.

(S.C.R. Vol. 4, p. 366). The prosecutor continues:

No, ladies and gentlemen, these people that testified are good reputable citizens of this county. They live right around here. They have got no interest in lying. They

---

[1] The issue raised in Ground Five was included in Petitioner's Ground One and has been addressed *supra*.

9

> told you the truth. They have identified–four of them, four eyewitnesses have positively identified the defendant as the person who shot Paul Gayden.

(S.C.R. Vol. 4, p. 367). Respondent argues that these statements were entirely proper and objections by defense counsel were not warranted.

The court is doubtful that any of these statements, isolated or collectively, rise to the level of bolstering and personal opinion. In fact, out of five pages of rebuttal closing argument the only arguably improper utterance was "Paul was trying to be what I call super honest." *U.S. v. Robles-Pantoja*, 887 F.2d 1250, 1256 (5th Cir. 1989) (finding no error with prosecutor's statements which essential urged jury to assess the motives and bias of undercover officer witnesses). The Fifth Circuit has held that a prosecutor "is not forbidden to argue that the fair inference from the facts presented is that a witness has no reason to lie." *U.S. v. Washington*, 44 F.3d 1271, 1278 (5th Cir. 1995) (citations omitted).

Given that there was only one potentially bolstering comment, the court cannot find that the proceedings were so infected with prejudice so as to deny Harris a fair trial. To the contrary, any presumed bias was easily overcome by the evidence adduced against Harris. Therefore, even if the court assumes the prosecutor's statement was improper, Harris cannot satisfy the second prong of *Strickland*–prejudice–that the outcome would have been different absent the comment. *See U.S. v. Laury*, 985 F.2d 1293, 1304,1307 (5th Cir. 1993). Ground Six is denied.

Ground Seven

Harris avers that counsel was ineffective by allowing testimony of the state's expert witness, outside his field of expertise, without objection. Again, Harris fails to recall which part of the witness's testimony was objectionable, so the Respondent has attempted to fill in the blank. Dr. Douglas Bowden was called as the State's expert witness. Bowden was the surgeon on duty in the hospital's emergency room the night Paul Gayden was shot. During Bowden's direct examination, he was asked to describe an x-ray taken of Gayden wounds. Bowden explained "there are two foreign bodies on the x-ray as well that look to be bullets, probably .22 caliber. I don't really know."

(S.C.R. Vol. 4, p. 178). On cross examination, defense counsel repeatedly asked Bowden if he was a ballistics expert. (S.C.R. Vol. 4, pp. 182-85). Presumably this is the statement upon which Harris relies in support of Ground Seven.

First, Bowden was not asked to identify the caliber of bullets lodged in Gayden. Bowden simply offered a guess and immediately followed his comment with "I don't really know." Second, as the Respondent notes, there were no ballistics issues in this case. The State did not attempt to match bullets to a weapon because no weapon was ever recovered. There simply was no dispute as to the type of gun used during the commission of the crime. Accordingly, Bowden's comment could hardly be characterized as objectionable. Thus, defense counsel's failure to object to the testimony was not deficient. Furthermore, even if stretched to an opposite conclusion, Harris cannot show that Bowden's layman's guess resulted in prejudice. Ground Seven is meritless.

Ground Eight

Harris next argues that his trial counsel was ineffective by failing to move to sever the indictment. Harris was charged with two counts in the indictment. In Count I Harris was charged with aggravated assault for shooting Paul Gayden. Count II charged Harris with being a felon in possession of a firearm.

There is no right to or presumption that multiple counts should be tried separately. *See* Miss. Code Ann. § 99-7-2; *Rushing v. State*, 911 So.2d 526 (Miss. 2005). Two or more offenses may be tried together if "(a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan." Miss. Code Ann. § 99-7-2(1). Once a defendant motions to sever a multi-count indictment, the state bears the burden of proving that the offenses are properly charged in one indictment. *Rushing*, 911 So.2d at 533. If the state meets its initial burden, the defendant is then afforded the opportunity to show the offenses were separate and distinct acts or transactions. *Id.* When analyzing a motion to sever, the reviewing court should consider, "whether the time period between the occurrences is insignificant, whether the evidence proving each count would be

11

admissible to prove each of the counts, and whether the crimes are interwoven." *Id.* (citing *Corley*, 857 So.2d at 172).

Given that the two charged offenses occurred simultaneous, evidence of each count would certainly overlap, and the crimes of which Harris was charged were unquestionably interwoven, he was not entitled to a separate trial on each count. *See e.g. Watkins v. State*, 874 So.2d 486 (Miss. 2004) (same transaction where defendant was charged with two counts of the same crime in the same general location within 72 hours involving same officer); *cf. Broderick v. State*, 878 So.2d 103 (Miss. 2003) (allowing multi-count indictment to be joined involving two victims of similar but separate instances of child molestation). There is no room to dispute that Counts I and II were not separate and distinct offenses which would have required severance. *Riser v. State*, 845 So.2d 720 (Miss. App. 2003). Despite the absence of the weapon used during the crime, Harris could not have shot Paul Gayden without possessing a firearm. *Jones v. State*, 798 So.2d 1241 (Miss. 2001). Thus, counsel's failure to file a motion for severance was clearly not deficient and prejudicial. Ground Eight is denied.

Ground Nine

In Ground Nine Harris contends that counsel was ineffective by failing to obtain a transcript of grand jury testimony. Harris also adds that the prosecution withheld discovery information. Although Harris did not elaborate upon his claim with any specific facts or identify what the grand jury transcript would reveal, in his state court pleadings, however, Harris argued that Gayden may have provided exculpatory testimony. The statement upon which Harris relies is Gayden's statement before entering the grand jury room that "I really don't know who shot me."

Harris' argument, however, is flawed. First, Gayden's statement was admittedly made outside the presence of the grand jury. Second, the statement made outside the grand jury proceedings was not recorded or transcribed. Since, this was spoken outside the grand jury proceedings and not recorded, the court will not presume the prosecutor had knowledge of the

statement. Therefore, the portion of Harris' Ground Nine reliant upon withholding exculpatory information is denied.[2]

As for failure to obtain a copy of the grand jury testimony, Harris has not shown that such an oversight was ineffective assistance. To the contrary, Harris' counsel did an excellent job of using Gayden's out of court statement numerous times throughout the trial. For example, during cross examination of Gayden defense counsel asked,

> Q. Do you remember saying before going into the grand jury room, "I really don't know who shot me"?
>
> A. Yes, Sir.

(S.C.R. Vol. 3, p. 202). Harris' counsel also elicited testimony from Willie Burkhead:

> Q. What did [Paul Gayden] tell you?
>
> A. He told me–I asked him well, he got out of the hosptial. I said Paul, I heard you been in the hosptial. I said what happened. I said I heard you been shot. I said who did it. He said I don't know, man. I don't know who shot me. He told me that twice. And he told a lot. I ain't the only one he told. It's a lot of people he told that.
>
> Q. And where were you when you saw Paul on this occasion?
>
> A. The first time I seen him I seen him at Wal-Mart. The second time I seen him tobacco store, Vaiden, Tally's Tobaccor Mart.
>
> Q. And he told you on both times that he didn't know who shot him.
>
> A. Right.
>
> Q. And he has told other people in the community that he don't' know who shot him.

---

[2] The court also notes that this portion of Harris' Ground Nine was not presented to the State's highest court in his petition for post-conviction relief. Thus, this portion of the claim has not been exhausted and is procedurally barred.

A. Right.

(S.C.R. Vol. 4, pp. 321-22); *see also* (S.C.R. Vol. 3, p. 279) and (S.C.R. Vol. 4, pp. 322-27).

It is clear that Gayden's statement was before the jury for consideration. Defense counsel's examination of the victim, resulted in Gayden admitting that he did in fact make the comment. Additionally, on more than one occasion and from more than one witness, defense counsel corroborated Gayden's admission. The jury was free to weigh the evidence and testimony in any reasonable manner. Consequently, even if counsel neglected to obtain the grand jury transcript, there was no prejudice created by that failure as defense counsel repeatedly made inquiry regarding Gayden's out of court statements. Hence, Harris' claims asserted in Ground Nine are denied.

Ground Ten

Next, Harris claims that counsel was ineffective for not offering an impeachment instruction on behalf of the defense. Presumably, Harris is referring to the testimony by Gayden quoted above. Respondent notes that defense counsel did submit an instruction which discussed the credibility of witnesses and discrepancies in testimony. That instruction was refused by the court as an incorrect statement of the law and because it was covered by a similar instruction.

An impeachment instruction is warranted where a key witness testifying for the State had given a prior inconsistent statement that directly contradicted his trial testimony against the defendant. *See Finley v. State*, 725 So.2d 226, 232 (Miss. 1998). Gayden candidly admitted he told several individuals, prior to trial, that he did not know who shot him. Since Gayden attempted to explain his contradictory out of court statements, it is not entirely clear that he was impeached. Nevertheless, the court is to grant the benefit of doubt to Harris which does little to bolster his argument.

Harris cannot satisfy both prongs of the *Strickland* test. Foremost, his counsel did offer an instruction which was ultimately refused. So defense counsel cannot be deficient for not providing an instruction. Next, even if the court were to assume that counsel was deficient for failing to

present the court with a properly drafted impeachment instruction, Harris cannot overcome the evidence adduced against him and demonstrate prejudice.

Including Paul Gayden, one witness after another took the stand and gave similar accounts of the events that lead up to the shooting. With little variation, each State's witness described the shooter as a black man wearing a white shirt and white hat, driving a white four-door car with two other passengers, who approach Gayden with a gun. Deputy Rigby testified than an unidentified man at the Truck Stop told him to stop a white car with black guys in it because they had done the shooting. Sybil McChirsten told the jury that Harris had frequented the Tobacco store twice that day and on the third visit, an angry Harris accused Gayden of taking his wallet. McChristen told Harris that Gayden was at the Truck Stop across the street. She further stated that she saw Harris drive over to the Truck Stop and seconds later heard gun shots. Renata Ward, an employee of the Truck Stop testified that she saw Harris with the gun aimed at Gayden and visually witnessed the second shot fired. Danny Donohoo, also an employee at the Truck Stop, stated that he too had scene the shooter fire the second shot and identified him as Harris. Finally, Houston Greene, a valet at a local club, saw Harris shortly after the shooting at around 11:00 p.m. Greene insisted that Harris told him that he, Harris, had shot Paul at the Truck Stop.

Given the overwhelming similar and consistent eyewitness accounts of events before, contemporaneous with and after the shooting, all identifying or describing Harris as the assailant, it is unlikely that any reasonable jury could have reached a different verdict. Even if Paul Gayden had failed to ever identify his attacker, there were a sufficient number of unimpeached witnesses who provided enough incriminating detail to find Harris guilty beyond all reasonable doubt. Therefore, assuming that Harris has demonstrated counsel's performance was deficient, he cannot prove that such performance prejudiced his defense.

None of Harris' ineffective assistance of counsel arguments are supported by the record in this case. At no time did counsel's alleged errors prejudice Harris' defense or rise to a level that deprived him of the right to competent representation. To the contrary, defense counsel's zealously

and capably represented Harris in the face of overwhelming unfavorable evidence. The state court reasonably and appropriately applied *Strickland* to deny each of Harris' ineffective assistance of counsel arguments.

## **Remaining Grounds**

### Ground Eleven

Harris contends that he was denied his right to due process when counsel withdrew before filing an appeal. Respondent argues that the claim is barred due to Harris' failure exhaust the theory in state court. The court agrees.

Harris did not assert the basis of Ground Eleven in his petition for post-conviction relief. As a result, the court may only review the merits of such motion if the Harris can show cause for the default and actual prejudice as a result of the alleged violation, or that failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 729-30, 751 (1991). In his pleadings, however, the Petitioner has demonstrated neither cause or prejudice for the procedural default, nor that the miscarriage of justice exception should apply. The court therefore recommends that Petitioner's claim be dismissed without further discussion.[3]

### Ground Twelve

Next, Harris insists that he was denied the constitutional right to a fair trial due to cumulative errors. As discussed in detail *supra*, the court simply does not agree. Petitioner has failed with every attempt to show that his attorney's actions or inactions were ineffective. He has similarly failed to show or prove any resulting prejudice from the alleged errors. He has not demonstrated that but for the asserted missteps and missed opportunities the outcome would have been different.

---

[3] It is worth noting that before withdrawing as attorney of record, defense counsel filed post-trial documents challenging the conviction, and documents necessary to perfect an appeal. Harris had retained his trial counsel and when he was unable to gather the funds required for representation on appeal, defense counsel filed a motion to secure Harris' status as a pauper. After his retained counsel withdrew, Harris was promptly appointed counsel for his direct appeal. There is simply no indication that Harris was denied due process when trial counsel withdrew his representation.

The Constitution guarantees each defendant a fair trial but not necessarily a perfect or error free trial. Errors that may have occurred, if any, were simply harmless. Based on the evidence presented and defense counsel's reasonable competent representation of Harris, he was afforded a fair trial the results of which are entirely reliable.

Ground Thirteen

Finally, in Ground Thirteen, Harris contends that he was denied due process when the State Supreme Court denied his motion for leave to pursue post-conviction relief in the trial court. The court does not review alleged abnormalities state habeas proceedings because such challenges do not raise a federal constitutional issue. *Wheat v. Johnson*, 238 F.3d 357, 361 (5th Cir. 2001). An attack on the state habeas proceeding does not address the detention of the petitioner. *Rudd v. Johnson*, 256 F.3d 317, 320 (5th Cir. 2001). Since Harris has not made a substantial showing of the denial of a constitutional right, Ground Thirteen is denied. *See Beazley v. Johnson*, 242 F.3d 248, 271 (5th Cir. 2001).

## Conclusion

The court has concluded that the grounds asserted by the Petitioner, neither singularly nor collectively, rise to the level worthy of federal habeas relief. From Harris' point of view his lawyer has failed him because he was not acquitted. From a review of the record, it appears that his attorney rendered competent and effective assistance throughout the trial. Furthermore, despite his invocation of legal terms of art and constitutional lingo, Harris has received all process due him. Therefore, Petitioner's claims are meritless and his petition shall be denied in all respects.

A separate judgement shall issue in accordance with this opinion.

This the 17th day of August, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE